IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BRANDON BRICKHOUSE, MONICA ALEXANDER, ADAN MUNYE, and CHRISTINA WILLIAMS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO: |
| DEKALB COUNTY, GEORGIA; JUDICIAL CORRECTION SERVICES, INC.; and INTEGRITY SUPERVISION SERVICES, LLC, | ) ) ) ) | _____ |
| Defendants. | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Brandon Brickhouse, Monica Alexander, Adan Munye, and

Christina Williams ("Plaintiffs") bring this action, on behalf of themselves and a

class of others similarly situated, against Defendants DeKalb County, Georgia

("DeKalb" or the "County"); Judicial Correction Services, Inc. ("JCS"); and

Integrity Supervision Services, LLC ("ISS"). Plaintiffs show as follows:

### Preliminary Statement

Courts dispense justice, not profits. It is a basic requirement of due process

that a court should be run as a court, not a scheme to generate revenue for a cash-

strapped local government. Defendants violated that requirement on a daily basis in the operations of the DeKalb County Recorder's Court ("DCRC"). Under the Georgia Constitution and Official Code of Georgia, the DCRC had jurisdiction *only* over county ordinance violations – *not* over violations of State law, including violations of State traffic laws as set forth in Title 40 of the Official Code of Georgia. DeKalb County's policy-makers consciously disregarded the limits of DCRC's subject-matter jurisdiction in the name of revenue. JCS and ISS then collected that revenue on behalf of Dekalb County by threatening people with State law penalties, such as 12-month sentences and license suspensions that DCRC never had the power to impose. In the process, Defendants deprived thousands of people of property and liberty, under color of State law but without legal authority.

DeKalb policy makers knew, at least as early as 2011, that the DCRC was usurping authority that it was not given under State law, but they took no action to correct the problem and instead attempted to paper it over by falsely declaring the DCRC to be a "municipal court," which it is not and never has been. DeKalb perpetrated this falsehood so that its District Attorneys could prosecute State law violations in Recorder's Court and so that the County could keep receiving money it knew it was not entitled to keep – namely, tens of millions of dollars per year in unauthorized fees and fines that were being collected on State law citations by DCRC and its private probation services. In 2014, a lawsuit finally brought these

abuses to the attention of the Superior Court of DeKalb County and the members of the DeKalb legislative delegation. New legislation in 2015 shut down the DCRC once and for all and merged its functions into the State Court of DeKalb County.

Plaintiffs Brandon Brickhouse, Monica Alexander, Adan Munye, and Christina Williams are persons who were unlawfully convicted and sentenced in the DCRC for alleged State law violations. Plaintiffs seek recovery from DeKalb, JCS, and ISS on behalf of themselves and a class of others similarly situated for Defendants' wrongful and unlawful conduct as set forth below.

### JURISDICTION AND VENUE

1.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) and (4), because claims asserted in the action arise under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. § 2201. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.

Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this judicial district. This District also is an appropriate venue for this action under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

3.

Plaintiff Brandon Brickhouse was unlawfully convicted in the DCRC on or about December 4th, 2013, of the State law traffic offense of speeding. The DCRC fined Mr. Brickhouse and ordered him to pay this fine through Defendant JCS. His Georgia driver's license was suspended as a result of this conviction. On or about August 14th, 2014, he was arrested for driving with a suspended license and was jailed and arraigned before the DCRC. In order to be released, he pleaded guilty to this State law offense, and was unlawfully sentenced to twelve months of probation and the maximum fine allowable under State law ($1000.00). As before, he was ordered to pay this fine through JCS.

4.

Plaintiff Adan Munye was unlawfully convicted of the State law traffic offense of driving with a suspended license in the DCRC on September 2, 2014.

The DCRC sentenced Mr. Munye to twelve months of probation along with five days of served jail time pursuant to O.C.G.A. § 40-5-121, and required him to pay $600 in fines imposed by State law. Mr. Munye's payment of the fines and his probation are administered through Defendant JCS.

5.

Plaintiff Monica Alexander was unlawfully convicted of the State law traffic offense of speeding in a school zone after a not-guilty plea and bench trial in the DCRC on November 13, 2014. The DCRC ordered her to pay a fine of $347.00.

6.

Plaintiff Christina Williams was unlawfully convicted of the State law traffic offenses of driving with a suspended Georgia driver's license and driving without automobile insurance in the DCRC on December 3, 2014. The DCRC suspended Ms. Williams' Georgia driver's license, sentenced her to twelve months of probation, and required her to pay $1,000 in fines. JCS was to administer her probation and collect her fines. However, when Ms. Williams showed up at the JCS office to make her payment in February, 2015, she found a sign on the door directing her to go to the Camp Circle building housing the Recorder's Court and make her payment to ISS instead. She did so, and has been sending in payments to the address provided to her by ISS ever since.

7.

Defendant DeKalb County is a body politic and corporate in law, and is subject to the jurisdiction of this Court. DeKalb County may be served by personal service on its interim Chief Executive Officer, Lee May, at his place of employment located at the DeKalb County Government Manuel J. Maloof Center, 1300 Commerce Drive, 6th Floor, Decatur, Georgia, 30030.

8.

Defendant JCS is a corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of Georgia. JCS has its principal place of business at 34 Peachtree Street, Atlanta, Fulton County, Georgia 30303. JCS may be served with summons and process by personal service upon its registered agent, Corporate Creations Network, at 2985 Gordy Parkway, 1st Floor, Marietta, Georgia, 30066.

9.

Defendant Integrity Supervision Services, LLC ("ISS") is a limited liability company organized and existing under the laws of the State of Georgia and having its principle place of business in DeKalb County, Georgia. ISS may be served with summons and process by personal service upon its registered agent, Richie Kittrell, at 4514 Chamblee Dunwoody Road, Suite 446, Dunwoody, DeKalb County, Georgia 30338.

## STATEMENT OF FACTS

### Jurisdiction of the DeKalb Recorder's Court

10.

DeKalb Recorder's Court is a special court of Georgia of non-uniform jurisdiction that exists outside the uniform system of courts created by the 1983 Georgia Constitution. As such, it has constitutionally limited jurisdiction.

11.

The 1983 Georgia Constitution contains a specific provision that allows for the continuation of only certain special courts of non-uniform jurisdiction like the DeKalb Recorder's Court. All non-uniform courts that were not continued pursuant to that provision were abolished in the 1983 constitutional revision.

12.

In relevant part, the 1983 Georgia Constitution provides: "Except as provided in this paragraph and in Section X, municipal courts, *county recorder's courts* and civil courts in existence on June 30, 1983, and administrative agencies shall not be subject to the provisions of this article." Ga. Const., Art. VI, § I, ¶ 1 (Emphasis added). DCRC was not abolished by the new Constitution. It continued to exist with county ordinance jurisdiction only.

13.

The 1983 Georgia Constitution further provides in relevant part:

> Municipal courts not otherwise named herein, of whatever
> name, shall continue as and be denominated municipal courts,
> except the City Court of Atlanta shall retain its name. Such
> municipal courts, **county recorder's courts**, the Civil Courts of
> Richmond and Bibb counties, and administrative agencies
> having quasi-judicial **powers shall continue with the same
> jurisdiction as such courts and agencies have on the
> effective date of this article** until otherwise provided by law."

Ga. Const., Art. VI, § X, ¶ 5 (Emphasis added).

14.

These provisions demonstrate that jurisdiction of the DCRC is

constitutionally limited to the jurisdiction it possessed as of the date of the

ratification of the Georgia Constitution of 1983. They further demonstrate that

county recorder's courts were regarded as separate and distinct from municipal

courts under the 1983 Constitution, and any municipal courts surviving after 1983

(excepting only the City Court of Atlanta) were required to be expressly

denominated as such.

15.

DCRC was one of the county recorder's courts that pre-existed the 1983

Constitution. A 1958 enabling amendment to the Georgia Constitution provided

Defendant DeKalb County with the power:

> "To establish and create in and for the County of DeKalb, a
> County Recorder's Court, which shall have jurisdiction in
> DeKalb County *outside the corporate limits of municipalities*
> and which shall be empowered to hear and determine cases
> involving violations of all *county ordinances* and regulations,
> *including traffic ordinances* and regulations, with authority to
> inflict punishment and/or penalty for violation thereof; and
> which shall have such other and further powers as may be
> prescribed by law."

Ga. Laws 1958, p. 583-584.  (Emphasis added).

16.

The DeKalb Recorder's Court was then established in 1959 by its "act of
creation." Ga. Laws 1959, p. 3095. With regard to the DCRC's jurisdiction over
traffic offenses, the 1959 act of creation provides:

> Section 3. **Jurisdiction over Uniform Traffic Law.** The Board
> of Commissioners of Roads and Revenues of DeKalb County,
> Georgia may adopt all or such portions of the 'Uniform Act
> Regulating Traffic On Highways' approved January 11, 1954
> (Ga. L. 1953, Nov.-Dec. Sess., p. 556), as now or hereafter
> amended, *as county traffic ordinances*, as to said board may
> seem appropriate *as traffic ordinances and regulations for
> said county*....

Ga. Laws 1959, p. 3095. (Emphasis added).

17.

The act of creation thus conferred subject-matter jurisdiction on the DeKalb
Recorder's Court over traffic offenses that are adopted "as county traffic
ordinances," not over state traffic law violations as such. The act did not confer

jurisdiction on the DeKalb Recorder's Court the ability to prosecute violations of state laws designated on charging instruments such as those in this litigation, namely violations of the Official Code of Georgia.

18.

The 1983 Georgia Constitution contains continuation requirements that place substantial restrictions on allowing the constitutional amendments and provisions that were in existence prior to its ratification to survive, such as the provision that authorized the creation of a DeKalb County Recorder's Court. Ga. Const. Art. XI, Sec. I, ¶ IV.

19.

Under that constitutional provision, the 1958 DeKalb Recorder's Court "enabling amendment" was continued in full force and effect, as was required for that Court to continue to exist. See Georgia Laws 1985, p. 4279.

20.

The 1983 Georgia Constitution, however, explicitly limited the terms under which the DeKalb Recorder's Court could remain in existence. Namely, the DeKalb Recorder's Court could only continue "without amendment." Thus, under the clear and explicit command of the Georgia Constitution, the jurisdiction of DeKalb Recorder's Court could not be and was not expanded beyond the jurisdiction that existed when the 1983 Georgia Constitution was ratified.

21.

The DeKalb County Code of Ordinances provides further evidence that the

DeKalb Recorder's Court has always been a county recorder's court of county

ordinance jurisdiction, never a municipal court, and was created simply to resolve

DeKalb County ordinance violations.

22.

For example, Section 653 of the DeKalb County Code of Ordinances

provides:

> Said recorder's court shall have jurisdiction to hear and
> determine cases involving violation of all county ordinances
> and regulations, including traffic ordinances and regulations,
> and to try and dispose of all offenses and offenders against any
> ordinance adopted by the governing authority of said county.
> Said court shall have such other and further jurisdiction as is
> hereinafter set forth, and as may from time to time hereafter be
> granted by law.

DeKalb County Code of Ordinances, Appendix B, Local Constitutional

Amendments, Local Acts and General Laws of Local Application, Article XII,

Division 2, §653. (Emphasis added).

23.

Section 655 further provides:

> Jurisdiction—Traffic.
>
> The board of commissioners of DeKalb County, Georgia, **may
> adopt** all or such portions of the "Uniform Act Regulating
> Traffic on Highways," approved January 11, 1954 (Ga. L.

> 1953, Nov.-Dec. Sess., p. 556) [now O.C.G.A. §40-6-1 et seq.],
> as now or hereafter amended, **as county traffic ordinances**....

Id. at §655 (emphasis added).

24.

The DeKalb Recorder's Court has never been vested with subject matter jurisdiction to hear and adjudicate violations of State traffic law violations set forth in the Official Code of Georgia. All prosecutions, deferred sentences, and convictions of title 40 violations of the Official Code of Georgia entered in the DCRC are void from the outset, and the fines collected as a result of such prosecutions have been collected illegally.

**Defendants' Unlawful Use of the DeKalb Recorder's Court**

25.

When now-convicted DeKalb CEO Burrell Ellis took office in 2009, the County faced a budget shortfall of more than $60 million. Ellis and other County officials began searching desperately for untapped sources of revenue. They found one such source in the DCRC, which reportedly had a backlog of about 500,000 uncollected traffic citations going back to the late 1990s. (The DCRC's record-keeping and computer systems were so deficient, however, that many of these citations had actually been paid, but the payments had not been recorded by DCRC personnel.)

26.

The DCRC was an arm of the executive branch of County government. Its judges were executive branch employees who were not answerable to DeKalb County voters, but instead served at the pleasure of the County Commission.

27.

Ellis appointed a new Chief Judge of the Recorder's Court, Nelly F. Withers, who took unprecedented and aggressive steps in 2010 to increase the revenue generated by the DCRC. Judge Withers announced a short "amnesty" period that produced almost $2 million in payments. A new and increased schedule of fees was adopted. And for persons cited under Title 40 of the Official Code of Georgia (which sets out state traffic offenses), Judge Withers began reporting failures to appear (a.k.a "FTAs") to the Georgia Department of Driver Services ("DDS"), which in turn triggered license suspensions for the affected citation-holders. Such license suspension is authorized only for "any person who has failed to respond to a citation to appear *before a court of competent jurisdiction* in this state or in any other state for a traffic violation other than a parking violation." O.C.G.A. 40-5-56 (emphasis added).

28.

Given the significant backlog of FTAs in the DCRC, the new FTA reports were transmitted to DDS at the rate of several thousand per month. Anyone pulled

over in DeKalb County and found to have an FTA on their driving record would be

ordered to appear in Recorder's Court on additional charges of driving with a

suspended license, a State law offense which carried a significant fine.

29.

There was a fundamental problem with these new policies: DCRC did not

have subject-matter jurisdiction over violations of State law, including all of the

State law traffic violations reportable to DDS. DeKalb's policy-makers had at least

constructive knowledge of this fact in 2010.

30.

In 2010, then DeKalb Solicitor-General Robert D. James prosecuted

offenses in Recorder's Court. But in the 2010 election cycle, James was elected

District Attorney. A new Solicitor-General, Sherry Boston, was appointed in early

2011 by then-Governor Sonny Perdue.

31.

Dekalb County wanted to keep prosecutors in the Recorder's Court for

revenue-related reasons. O.C.G.A. § 15-18-80 permits a prosecutor to establish a

pre-trial diversion program, charging offenders as much as $1000 to have their

charges dropped upon compliance with the program's terms. The statute further

provides that "[a]ny fee collected under this subsection shall be made payable to

the general fund of the political subdivision [in this case, DeKalb County] in which

the case is being prosecuted." O.C.G.A. § 15-18-80(f). The prosecutors in the

DCRC referred as many accused persons as possible to this program under threat

of a State law charge and penalty, in order to generate tens of millions of dollars in

revenue for Dekalb County. In addition, DeKalb County derived significant

revenue just from having prosecutors in the Recorder's Court illegally charging

people with violations of State law.

32.

James wished to continue to be the prosecuting authority in the DCRC after

transitioning to the Office of the Dekalb County District Attorney. Statutory

authority permits a District Attorney to prosecute State law violations found in title

40 of the Georgia Code in municipal courts. But the District Attorney was

prohibited from appearing in a recorder's court. Evidence uncovered in an open

records request to the Georgia Prosecuting Attorney's Council reveals that county

policymakers requested an advisory legal opinion from the General Counsel of the

Prosecuting Attorneys' Council of Georgia ("PAC") as to whether the DCRC

qualified as a municipal court.

33.

PAC's legal opinion unequivocally held that the DCRC was not a municipal

court. Further, upon information and belief, PAC advised County policy-makers

that the jurisdiction of the DCRC under the Georgia Constitution and the Official

Code of Georgia was narrowly limited to County ordinance violations and did not extend to State law offenses.

34.

The PAC proclamation and research did not sit well with DeKalb County officials involved in the revenue-generating scheme. Not surprisingly, Dekalb County was unwilling to forego the huge profits and revenue that DCRC was already collecting from citizens unlawfully convicted of State law traffic violations in the DCRC. The County had stated that its intent was to make the Recorder's Court generate revenue on the order of $20 million per year. State traffic law violations carry much heavier fines and longer sentences, and the system of prosecuting such violations in the DCRC therefore generated far greater revenue for the governing body than the limited County ordinance violations that the DCRC actually had jurisdiction to adjudicate. State law convictions also carried the possibility of reporting to the Department of Driver Services, which gave the DCRC and District Attorney James significant leverage in coercing guilty pleas. In addition, the County was unwilling to pull the District Attorney's office out of the DCRC and give up the substantial revenue that the County got from the pretrial diversion program unlawfully operated by District Attorney James in the DCRC.

35.

DeKalb County's policy-makers knowingly misrepresented to the public, in a 2012 Resolution and a standing Order of the Chief Judge of the DCRC, that the DCRC was actually a municipal court, which it is not and never has been.

36.

Defendants traveled under this false flag until late 2014, when a lawsuit against District Attorney James finally forced the DeKalb legislative delegation to transfer the DCRC's caseload to the State Court of DeKalb County. In a hearing on November 13, 2014, Judge Courtney Johnson of the DeKalb County Superior Court made clear that she rejected James's argument that the DCRC was a municipal court. Faced with the adverse PAC opinion and the certain prospect of an adverse ruling that would have sweeping consequences (not only for Dekalb County revenue but for the validity of several hundred thousand unlawful convictions, license suspensions, and arrests), the DeKalb District Attorney's Office suddenly pulled all prosecutors out of the DCRC, so quickly that there were no prosecutors at all in that court for approximately two months, requiring hundreds of cases to be continued.

37.

DCRC Chief Judge Withers was forced to suspend the pretrial diversion program effective immediately due to the lack of prosecutors to operate it.

38.

DeKalb County's revenue-driven illegal and improper operation of the DeKalb Recorder's Court as a fanciful "municipal court" with hugely expanded jurisdiction constituted an illegal assertion of judicial authority, wrapped in a press release from a Judge no less, that had no colorable basis in law or fact. Defendants acted in bad faith by usurping such jurisdiction and misrepresenting to the public the true nature of the DCRC.

39.

In addition, DeKalb County's ordinances make clear the DeKalb Recorder's Court had no jurisdiction or authority to impose a sentence, probated or otherwise, greater than 120 days. *See* Dekalb County Code of Ordinances, Appx. B, Local Constitutional Amendments, Local Acts and General Laws of Local Application, Article XII, Division 2, § 667(a).

40.

Despite this unequivocal limitation, the DeKalb Recorder's Court had an established custom and practice of imposing illegal sentences of 12 months' duration, almost all of which were probated and administered by JCS and/or ISS. All of this was undertaken outside of the DCRC's authority for the purpose of raising unlawful revenue for the cash-strapped County.

41.

In addition to the PAC legal opinion, prior Chief Judges of the DCRC, including former Chief Judge Joy Walker, and other concerned citizens, also have repeatedly cautioned and complained to the DeKalb County Commission over a period of years that the DCRC was illegally imposing fines, costs, and probation fees for State traffic law violations over which the DeKalb Recorder's Court had no jurisdiction. Defendants had actual or constructive knowledge that their activities were illegal.

**Collection of Unauthorized Fines and Fees by JCS and ISS**

42.

Defendant JCS contracted with DeKalb County to supervise probations of persons sentenced in DCRC, including probations with illegally extended durations and probations that were based on unauthorized State law convictions. Upon information and belief, JCS also helped administer the unlawful pretrial diversion program set up by District Attorney James, who had no authority to prosecute in Recorder's Court.

43.

Defendant JCS charged and collected probation "supervision fees" of approximately $30-$40 per month from each person sentenced to probation, in addition to the illegal fine payments JCS collected from the probationers on behalf

of DeKalb County for illegal and void convictions and the illegal fees collected

from participants in District Attorney James's pretrial diversion program.

44.

The charging of such fees and the collections of fines between months 5 and

12 (of each 12-month probated sentence) is impermissible and illegal, yet occurred

under color of law and was enforced by the DeKalb Recorder's Court in the form

of "probation revocation hearings."

45.

Such probation revocation hearings occurred when probationers failed to pay

the aforementioned fines and/or fees. When JCS or ISS reported such a delinquent

probationer, the DCRC would schedule a hearing, "revoke" probation, and jail the

probationer for some period of time as "punishment."

46.

These "revocation hearings" were a strong-arm revenue-collection tactic and

were performed without regard to due process. The national organization Human

Rights Watch documented one such hearing in which DCRC Judge Angela Brown

hauled 300 probationers before the court on a docket that the DCRC mockingly

titled, "Animal Control." Judge Brown asked a JCS representative whether each

person had an outstanding warrant and how much each person supposedly owed,

took the JCS representative's statements at face value without evidence, and then

asked the probationer whether they could pay that amount immediately. If they said no, then they were immediately and summarily jailed. As probationers began to realize the nature of the proceeding, some tried to leave, but Judge Brown directed her deputies to block the doors and prevent anyone from leaving. *See* "Profiting from Probation: America's 'Offender-Funded' Probation System," Feb. 5, 2014, https://www.hrw.org/report/2014/02/05/profiting-probation/americas-offender-funded-probation-industry (last viewed July 13, 2015).

47.

To "revoke" a person's probation for failure to pay the illegally assessed fines and fees complained of herein is an illegal and void act.

48.

On information and belief, DeKalb County has received annual revenue of approximately $20,000,000.00 as a direct and proximate result of its illegal prosecution of Georgia state traffic laws in its Recorder's Court.

49.

The money illegally collected as fines and fees by and on behalf of the DCRC went in part to JCS and ISS, and in part to DeKalb County.

50.

In addition, even after the Chief Judge of the State Court of DeKalb County had taken over the functions of the Recorder's Court in February, 2015, and had

declared that probation for Recorder's Court sentences would be administered by
probation officials of the State of Georgia, Defendant ISS set up a table outside the
DCRC courtroom and continued to collect fines and fees on behalf of DCRC,
apparently without legal authority to do so.

### The Injury to Plaintiffs and Other Class Members

51.

The illegal conduct of Defendants DeKalb County, JCS, and ISS complained
of herein was motivated by their desire to exact excessive and illegal sums from
Plaintiffs and similarly situated persons.

52.

The judgment of a court having no subject matter jurisdiction, like the
judgments of the DCRC complained of herein, is a nullity that is void and it must
be so held in any court when it becomes material to the interests of the parties.

53.

Georgia law provides that a facially void judgment may be attacked in any
court by any person.

54.

In each and every instance set forth above, Defendants acted intentionally, or
recklessly, in disregard of Plaintiffs' constitutional rights. Defendants knew or
should have known that the DCRC lacked jurisdiction over State law violations.

Defendants further knew or should have known that sentencing Plaintiffs and the putative class members to probation sentences of more than 120 days was not authorized by State law. For Defendants to willfully ignore these jurisdictional limitations and misrepresent the extent of the DCRC's authority to Plaintiffs and other class members in order to secure County revenue violates Due Process and is wholly inconsistent with the fair administration of justice.

55.

As a direct and proximate result of Defendants' illegal policy and practice, Plaintiffs and others were wrongfully deprived of money that belonged to them.

56.

Through their pervasive practice of collecting unauthorized and illegal fines and fees in and through the Recorder's Court, Defendants have compelled through threat of imprisonment the collection of tens of millions of dollars from Plaintiffs and others, under color of State law but without actual legal authority to do so.

## CLASS ALLEGATIONS

57.

Plaintiffs bring this class action on behalf of persons who, within the Class Period as defined below, paid fines, costs, and probation supervision fees to one or more of the Defendants and/or their agents pursuant to sentences of the DeKalb County Recorder's Court: (1) for violations of state laws found in the Official

Code of the State of Georgia; or (2) in connection with sentences of more than 120 days of probation by the DeKalb Recorder's Court (the "Class").

58.

For Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983, the Class Period is two years prior to the filing date of this litigation. For all other claims, the Class Period is four years prior to the filing date of this litigation.

59.

The proposed Class contains thousands of members and is so numerous that joinder of all class members is impracticable.

60.

There are questions of law and fact that are common to the Class, which include:

(1) The illegality of prosecuting state law violations in the DCRC;

(2) The illegality of imposing probated sentences of more than 120 days in the DCRC;

(3) That the judgments and sentences complained of herein are void on their face for lack of subject-matter jurisdiction;

(4) That Defendants' conduct violated Due Process;

(5) That Defendants' conduct violated Georgia law;

(6) That Defendants cannot equitably retain the monies illegally collected;

and

(7)  That the fines, costs and fees complained of herein may be recovered.

61.

There is the very real potential for differing and conflicting resolutions of those common questions of law and fact if the putative class members' claims were forced to proceed on an individual basis in multiple forums before multiple judges and/or juries.

62.

The questions of law and fact that are common to all class members predominate over any questions that may affect only individual class members.

63.

A class action is a superior method of adjudicating the class members' claims because individual actions would unnecessarily burden the courts and create the risk of inconsistent results.

64.

The claims of Plaintiffs are typical of the claims of the class members. Plaintiffs, and all class members, are persons who were prosecuted in the DeKalb Recorder's Court for violations of state laws and/or who have been sentenced to probated sentences of more than 120 days for such violations.

65.

Plaintiffs have no interests that are antagonistic or adverse to the other class members.

66.

Given the significant expense required to prosecute the foregoing claims against Defendants, the costs of individual actions would exceed the amount recovered in any individual action. The expense of pursuing individual actions would require many individual class members to forego their individual claims against Defendants if they are not permitted to pursue those claims as a class.

67.

This action is manageable because the evidence proving that Defendants are engaging in the alleged conduct is common to the Class. Furthermore, the identities of the class members are known to Defendants or are easily identifiable from records maintained by Defendants.

68.

Plaintiffs have retained counsel who is experienced in class action litigation, complex litigation, and litigation with public entities. Accordingly, Plaintiffs will fairly and adequately protect and represent the interests of the Class.

69.

Plaintiffs seek certification of a Class under O.C.G.A. § 9-11-23 defined as follows:

(a)     All persons who have been convicted of violations of the

Official Code of the State of Georgia in the DeKalb County

Recorder's Court within the Class Period; and

(b)     All persons who have received probated sentences of more than

120 days in the DeKalb County Recorder's Court within the

Class Period.

## COUNT I
## Violation of Federal and State Due Process

70.

By knowingly requiring Plaintiffs and the class members to pay fines and fees that DCRC had no legal authority to impose, Defendants deprived Plaintiffs of property without due process of law in violation of Plaintiffs' constitutional rights. See U.S. Const. amend. XIV, § 1; Ga. Const. art. 1, § I, ¶¶ I and II.

71.

In addition, by continuing to operate the DCRC outside its lawful jurisdiction and by threatening, imposing, and enforcing sentences in excess of those that the DCRC was legally authorized to impose, Defendants deprived

Plaintiffs and the other class members of their liberty without due process of law.

72.

By deliberately operating the Recorder's Court outside its lawful jurisdiction for the purpose of maximizing revenue, DeKalb County deprived Plaintiffs of their constitutional right to a fair and impartial tribunal that would render adjudications based on the law and the facts. DCRC Chief Judge Nelly F. Withers was a County policy-maker. She was originally appointed by County CEO Burrell Ellis, served at the pleasure of the County Commission, and operated within the executive branch of the County. She expressly and publicly stated that she sought to operate the Court in such a way as to generate greater County revenue. Through Chief Judge Withers, the County sent the unmistakable message to the judges of the DCRC – all of whom served at the pleasure of the County Commission – that their job was to generate revenue for the County. In addition, the County unlawfully permitted District Attorney Robert James to prosecute in the Recorder's Court for revenue-driven reasons, creating the illusion of legal authority by falsely representing to the public that the DCRC was a municipal court.

73.

Defendants' use of the DeKalb Recorder's Court to impose illegal fines and take the property of Plaintiffs and the putative class reflects the implementation of a governmental policy, custom, and practice of DeKalb County.

74.

In each and every instance set forth above, Defendants acted intentionally, with malice, and with actual intent to cause injury in the performance of their official functions. Defendants knew or should have known that confiscating funds and depriving persons of liberty without any statutory authority violated Plaintiffs' constitutional rights. The actions set forth above were taken by Defendants under color of State law.

75.

As a direct and proximate result of Defendants' illegal policy and practice, Defendants unjustly and illegally enriched themselves by depriving Plaintiffs and all other similarly situated persons of their property. Defendants are jointly and severally liable for the violations of Plaintiffs' rights, and the harm they suffered as a result, because each Defendant personally participated in the actions or failures to act, or implicitly authorized, approved, or knowingly condoned or failed to remedy the wrongs at issue.

## COUNT II
### Violation of Takings Clause

76.

Raising revenue for the County is a public purpose that is properly achieved through taxation and other lawful means, not through illegitimately expanding the

jurisdiction of a court and imposing fines and fees that are not authorized by law.

77.

By requiring Plaintiffs and the putative class members to pay unauthorized and illegal fines, Defendants took private property for a public purpose without just compensation in violation of the Georgia and federal constitutions.

78.

Plaintiffs and the putative class members are entitled to recover all fines, costs and fees paid to DeKalb County, JCS, and/or ISS in connection with the void judgments and sentences entered against them in the Recorder's Court.

## COUNT III
### Recovery of Fees Paid Pursuant to Invalid Contracts
### (Against JCS and ISS only)

79.

Defendants entered into written contracts that purported to allow JCS and ISS to collect civil fines and probation supervision fees in connection with probation sentences imposed in the DeKalb Recorder's Court that exceed 120 days.

80.

To the extent that DeKalb purported to authorize JCS and ISS by contract to collect fines and fees beyond the 120th day of the probation sentences, such contracts are invalid and void as a matter of law.

81.

Plaintiffs and the putative class members can recover all fines and fees paid through JCS and/or ISS in connection with probation sentences to the extent that those sentences extended beyond the legal limit of 120 days.

## COUNT IV
## Money Had and Received
## (Against JCS and ISS only)

82.

Under the doctrine of money had and received, recovery is authorized against one who holds sums of money belonging to another which the holder ought in equity and good conscience to refund.

83.

Defendants received money that in equity and good conscience they should not be permitted to keep, because it was taken on false pretenses and without legal authority. Plaintiffs have made demand for repayment, but Defendants have not refunded the money in question.

84.

Plaintiffs are entitled to recover from JCS and ISS all monies collected by those entities pursuant to unlawful DCRC sentences as alleged herein.

## COUNT V
### Conversion
### (Against JCS and ISS only)

85.

Defendants' practice of appropriating Plaintiffs' and others' money without legal authority as alleged herein constitutes conversion, which is an intentional tort under Georgia law.

86.

Defendants' conversion of Plaintiffs' funds entitles Plaintiffs to the return of the amount of money converted, plus interest from the date of conversion.

## COUNT VI
### Declaratory Judgment

87.

The DCRC has now been shut down and its functions merged into the State Court of DeKalb County. Upon information and belief, Chief Judge Wayne Purdom of the State Court of DeKalb County has ordered that probation will be conducted not through private probation services but through the State probation office. In connection with that Order, JCS's services as private probation collector for the DCRC were terminated.

88.

Since that time, however, Plaintiff Christina Williams and other class

members have been directed by actual or apparent agents of Defendants to make their probation payments arising from DCRC convictions to ISS, which is a private probation company.

89.

This issue presents an actual, present, and justiciable controversy creating substantial uncertainty as to Plaintiffs' obligations, if any.

90.

Plaintiffs seek declaratory judgment that they are not required to continue to make probation payments to ISS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court will:

(a)   Order pursuant to O.C.G.A. § 9-11-23 that this action be maintained as a class action and certify the appropriate, requested class(es);

(b)   Order trial by jury on all claims so triable;

(c)   Enter judgment in favor of Plaintiffs and the putative class members;

(d)   Impose a constructive trust on all money taken from Plaintiffs and putative class members in violation of the law;

(e)   Order that Defendants return all money taken from Plaintiffs and putative class members in violation of law, with statutory interest paid;

(f)   Enter judgment in favor of Plaintiffs and the class for punitive damages, with statutory interest, as allowed by law, against each Defendant, jointly and severally;

(g)     Enter declaratory judgment that Plaintiffs need not make payments to ISS;

(h)     Award Plaintiffs the costs of this lawsuit and reasonable attorneys' fees and expenses; and

(i)     Order such other and further relief as this Court may deem just and proper.

Respectfully submitted, this 15th day of July, 2015.


**TROY P. HENDRICK**
Georgia Bar No. 346503
215 N. McDonough Street
Decatur, Georgia  30030
(404) 310-9795
troy@troyhendricklaw.com


**LEIGHTON MOORE**
Georgia Bar No. 520701
400 Colony Square, Ste. 2000
1201 Peachtree Street. NE
Atlanta Ga. 30361
(678) 237-0330
leighton@moorefirmpc.com


**GUS MCDONALD**
Georgia Bar No. 488795
4005 South Hwy 365
P.O. Box 555
Cornelia Ga. 30531
(706) 778-5291
gus@mcdonaldcody.com


**MARLAN WILBANKS**
Georgia Bar No. 758223
3414 Peachtree Road NE
Suite 1075
Atlanta Ga. 30326
(404) 842-1075
mbw@wilbanks-bridges.com